JUNMEI WU, ESQ. (SBN 355385)
LAW OFFICES OF JUNMEI
251 SOUTH LAKE AVENUE, SUITE 800, ROOM 714
PASADENA
CA 91101

TELEPHONE: (737) 738-1440
EMAIL: JUNMEILAW@GMAIL.COM

ATTORNEY FOR PETITIONER QINGZHE XU

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| QINGZHE XU<br><br>*Petitioner*,<br><br>*v.*<br><br>WARDEN, ADELANTO ICE PROCESSING CENTER;<br><br>FIELD OFFICE DIRECTOR, ICE ERO LOS ANGELES;<br><br>*Respondents.* | D.C. No. _____<br><br>A# 220 520 942<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br>**FIFTH AMENDMENT PROCEDURAL AND SUBSTANTIVE DUE PROCESS**<br>**EXPEDITED CONSIDERATION REQUESTED** |

## INTRODUCTION

1. Petitioner Qingzhe Xu seeks release from immigration detention imposed on October 9, 2026, when ICE arrested him at Los Angeles International Airport while he waited to board a domestic vacation flight. Before detention, he lived openly in the community, kept USCIS informed of his residential address, pursued his asylum application, and received employment authorization and related mailings at his actual residences. He filed for asylum before the date on which DHS itself alleges that his F-1 student status ended. Ex. A ¶¶ 2–8, 14–28; Ex. B at 1–5; Ex. D at 2–3; Ex. E.

2. USCIS expressly advised in the Form I-589 receipt: "You may remain in the U.S. until your asylum application is decided." Petitioner relies on this assurance, application processing, and repeated employment-authorization approvals as context for his established community liberty and the need for meaningful process—not as a grant of immigration status or immunity from detention. Ex. E at 1; Ex. B at 2–5.

3. This petition asserts two distinct Fifth Amendment claims: procedural due process, challenging the safeguards preceding the deprivation of liberty, and substantive due process, challenging confinement alleged to be arbitrary and insufficiently related to a legitimate civil detention purpose. It does not assert separate Fourth Amendment, statutory-arrest, APA, or prolonged-detention claims, adjudicate asylum or removability, or seek reweighing of a discretionary bond decision.

4. Petitioner requests restoration of community liberty, subject to lawful conditions, rather than immunity from enforcement. His repeated domestic travel, address disclosures, and sustained dealings with USCIS support an individualized inquiry into the necessity and timing of confinement. Detention authority and the process required before exercising it are distinct questions. Ex. A ¶¶ 6, 8, 30–31.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 2241(a), (c)(1), and (c)(3). Petitioner is physically confined under federal immigration authority at the Adelanto ICE Processing Center in San Bernardino County, California, and alleges that his present custody violates the Fifth Amendment. He seeks the traditional habeas remedy of release. Ex. A ¶ 28.

6. The Warden or Facility Administrator is Petitioner's immediate custodian. Naming that official and filing in the district of confinement accords with the general rule in Rumsfeld v. Padilla, 542 U.S. 426 (2004). Petitioner and his custodian are within this District and its Eastern Division. This petition relies on § 2241(a), not the state-prisoner provision in § 2241(d).

7. The claims concern constitutional limits on custody procedures and allegedly arbitrary confinement, not a discretionary bond amount or an Immigration Judge's weighing of evidence. Section 1226(e) does not foreclose habeas review of colorable constitutional challenges to the governing legal framework. Hernandez v. Sessions, 872 F.3d 976, 987–88 (9th Cir. 2017). Petitioner recognizes that merely relabeling a discretionary custody disagreement would not create jurisdiction.

8. Petitioner seeks no order setting aside a removal order, deciding asylum, or preventing the commencement or adjudication of removal proceedings. Those proceedings may continue upon release. Jennings v. Rodriguez, 583 U.S. 281 (2018) distinguishes detention-related legal challenges from review of removal proceedings and discretionary custody judgments. Petitioner does not contend that Jennings requires a hearing before every immigration arrest.

9. Under 28 U.S.C. § 2243, Petitioner requests prompt consideration and a return certifying the true cause of detention, including the applicable detention statute, custody determination, arrest

warrant, and any pre-detention notice or process relied upon. He requests expedited determination consistent with the statute and the Court's applicable habeas procedures.

## PARTIES

10. Petitioner QINGZHE XU, A No. 220-520-942, also known as James Xu, is a citizen of China detained at the Adelanto ICE Processing Center. He declares that he has remained confined there since his October 9 arrest. Ex. A, introductory paragraph and ¶ 28; Ex. D at 1–3.

11. Respondent WARDEN OR FACILITY ADMINISTRATOR, ADELANTO ICE PROCESSING CENTER, is named in an official capacity as the person exercising immediate physical custody, with responsibility for day-to-day confinement and the ability to implement release.

12. Respondent FIELD OFFICE DIRECTOR, LOS ANGELES FIELD OFFICE, ICE, is named in an official capacity to the extent that official directs detention and can implement effective habeas relief. The I-213 identifies ERO Los Angeles as the arresting and detaining office. Ex. D at 2–4.

## FACTUAL ALLEGATIONS

13. Petitioner was inspected and admitted in F-1 student classification. His I-94 lists "D/S," or duration of status, rather than a fixed calendar expiration date. This petition therefore does not assign the I-94 a calendar expiration date. DHS's distinct student-status allegation follows. Ex. F.

14. USCIS received Form I-589 on September 2, 2021, and issued the receipt on September 3, 2021, in which it states, "You may remain in the U.S. until your asylum application is decided." The I-213 independently records that filing and alleges termination of F-1 status on December 6,

2022, for failure to enroll. Even under DHS's chronology, Petitioner sought asylum before the alleged termination of student status, not for the first time after arrest. Ex. E at 1; Ex. D at 3.

15. USCIS scheduled asylum biometrics for October 1, 2021. The notice, addressed to 6977 Caswell Lane in Fontana, bears a biometrics-processing stamp dated October 1, 2021. This documents participation in the application process rather than evasion. Ex. B at 1.

16. Petitioner applied for his first EAD on April 1, 2022. USCIS approved category C08 authorization on April 6, 2022, valid through April 5, 2024. The approval and April 11, 2022 mailing document identify his then-residence at 6977 Caswell Lane, Fontana. He states USCIS mailed the card to that residence. Ex. A ¶ 3; Ex. B at 2–3.

17. Petitioner moved to 616 Fairmont Drive in San Bernardino in June 2022 and declares that he has lived there since. He expressly states that since filing his asylum application he has kept his residence address updated with USCIS. This was an established home, not an address first supplied for release after arrest. The tax-return packet and Amazon earnings statements also identify that address. Ex. A ¶ 6; Ex. G; Ex. H at 1–8.

18. He applied to renew his EAD on March 8, 2024. USCIS approved renewal on December 27, 2024, with validity from December 26, 2024, through December 25, 2029. The approval and December 31 mailing document identify 616 Fairmont Drive. He states USCIS mailed this card to his current residence. These two sets of mailings corroborate updated address information. Ex. A ¶¶ 4, 6; Ex. B at 4–5.

19. Petitioner describes delivery work and Amazon employment, including work for Amazon from October 2024 through the period preceding detention. His authorization remained valid when arrested. Amazon earnings statements corroborate employment immediately before detention, including the pay period October 4–10, 2026, paid October 16, 2026. Detention

interrupted regular work, and he fears losing his position because of his continued absence. Ex. A ¶¶ 4–5, 29; Ex. B at 4; Ex. H at 1–8.

20. Petitioner describes travel to approximately 37 states and many domestic flights after the period he describes as the expiration of his I-94. Read with his D/S record and DHS's alleged status-termination date, this supports repeated, open domestic travel rather than concealment. Ex. A ¶ 8; Ex. F; Ex. D at 3.

21. DHS describes a TSA referral and targeted operation. The I-213 states officers identified themselves, conducted a field interview, obtained California identification, advised him that a warrant had issued, and arrested him without incident. Petitioner states that he was only asked about his name; after he twice requested a warrant, an officer showed him an electronic document on a phone but provided no paper copy at the airport. He also states that he tried to bring his asylum receipt to their attention, but they continued repeating that he had overstayed his visa and gave him no meaningful opportunity to address their stated reason before taking him into custody. Ex. D at 2–3; Ex. A ¶¶ 15–27.

22. Petitioner declares that he had no advance notice of intended detention and no pre-detention hearing before an Immigration Judge or other neutral decisionmaker. Ex. A ¶¶ 25–27.

23. DHS identifies civil overstay and student-status charges and records a negative NCIC check, which is not offered as a complete criminal-history clearance. It acknowledges the asylum filing and pending USCIS applications but records no claimed fear and describes Petitioner as unemployed or retired. Petitioner's declaration describes religious-persecution asylum grounds and Amazon employment, while USCIS documents establish work authorization and Amazon earnings statements corroborate employment shortly before arrest. Those discrepancies illustrate

the potential value of a meaningful response opportunity. Ex. D at 1–4; Ex. A ¶¶ 2, 4–5; Ex. B at 4; Ex. H at 1–8.

24. A November 10, 2026 notice schedules an internet-based master calendar hearing for December 8, 2026, at 8:30 a.m. Pacific Time in the Adelanto Immigration Court. This is a removal-proceeding notice. Ex. C.

25. Petitioner has built an independent life in the United States through work, travel, church attendance, friendships, family connections, and participation in his neighborhood. He has supported himself through authorized employment and reports filing federal income tax returns for tax years 2022 through 2025. He has traveled to approximately 37 states, frequently attended Magnolia Church while living nearby, and continued attending generally about once a month after moving farther away. He maintains good relationships with his landlord, roommates, and neighbor, communicates regularly with friends and gathers with them during holidays, and has a U.S.-citizen maternal aunt who has visited him in the United States. He wishes to return home, continue authorized employment, and pursue his immigration case. He declares that he will attend all required appointments and hearings and comply with lawful reporting requirements and conditions of release. Ex. A ¶¶ 5–12, 29–31; Exs. G–H.

26. The Immigration Judge denied Petitioner's request for release on bond on November 3, 2026.

27. This petition challenges the process preceding the October 9 detention and the alleged absence of a constitutionally sufficient, individualized civil justification for that deprivation, not the discretionary merits of the subsequent bond denial. Petitioner intends to challenge before the BIA whether the Immigration Judge abused his discretion. Here, he does not ask this Court to reweigh the bond evidence or substitute its judgment for the Immigration Judge's.

## LEGAL FRAMEWORK

28. The Fifth Amendment protects Petitioner's physical liberty through procedural safeguards and substantive limits on arbitrary civil confinement. Claim One challenges the procedures used to take him from established community life into detention; Claim Two challenges the asserted absence of a sufficient civil justification for that confinement. Neither claim seeks adjudication of asylum or removability.

29. The process due is assessed under Mathews v. Eldridge, 424 U.S. 319, 335 (1976): the private interest affected, the risk of erroneous deprivation and probable value of additional safeguards, and the government's interest and the burdens of additional process. The inquiry is specific to the circumstances of the deprivation.

30. Petitioner's claim concerns the loss of his actual liberty while residing openly and pursuing immigration relief through the government's own application process. Neither his pending asylum application nor employment authorization is alleged to confer continuing F-1 status or immunity from immigration enforcement.

31. Statutory authority to arrest or detain does not resolve whether the procedures used in a particular case satisfy due process. Petitioner seeks an individualized assessment of the advance notice and response opportunity required before the deprivation alleged here.

32. The relevant procedural question is whether Petitioner had a meaningful opportunity to understand the proposed grounds for confinement and present responsive information before a neutral decisionmaker, in circumstances in which advance process was practicable.

33. This petition recognizes the completed bond hearing. It distinguishes the procedures preceding the initial deprivation from administrative review of the later discretionary bond decision.

34. Petitioner seeks restoration of the liberty he possessed immediately before detention, subject to lawful conditions, rather than a determination of asylum eligibility, removability, or the discretionary merits of bond.

## CLAIM ONE—FIFTH AMENDMENT PROCEDURAL DUE PROCESS

35. Petitioner realleges and incorporates paragraphs 1 through 34. Respondents deprived him of physical liberty without constitutionally adequate advance notice and a meaningful opportunity to respond before a neutral decisionmaker. Ex. A ¶¶ 25–28.

36. Petitioner possessed a substantial interest in his actual freedom while living and working in the community and pursuing his asylum application. His home, employment, church attendance, friendships, neighborhood relationships, and extended-family connections describe the established life interrupted by detention. Ex. A ¶¶ 5–12, 28–30; Exs. G–H.

37. The private interest is exceptionally weighty because confinement imposes an immediate physical restraint and separates Petitioner from his home and ordinary life. He reports that detention prevents him from continuing regular work and is likely to cause loss of his Amazon employment. Ex. A ¶¶ 28–30.

38. The risk of erroneous deprivation was substantial because Petitioner had no advance notice of intended confinement or meaningful opportunity to assemble and submit responsive evidence before a neutral decisionmaker. Notice would have permitted him to present the asylum receipt, employment authorization, address history, employment records, and proposed compliance arrangements before liberty was lost. Ex. A ¶¶ 25–27, 31; Exs. B, E, G–H.

39. The accounts of the airport encounter demonstrate the value of that response opportunity. Petitioner states that he tried to explain his asylum receipt, while officers continued repeating that he had overstayed his visa. The I-213 describes him as unemployed or retired, whereas his

declaration and payroll records describe employment immediately preceding detention. The petition acknowledges the field interview and electronic warrant document; it challenges the adequacy of the opportunity to respond concerning confinement. Ex. A ¶¶ 19–27; Ex. D at 1–3; Ex. H.

40. The government has substantial interests in enforcing immigration law and securing appearances. Petitioner contends that the known circumstances did not require dispensing with advance safeguards: he maintained an address known to USCIS, pursued agency processing, worked under employment authorization, and was encountered during domestic travel. DHS describes a targeted operation based on civil immigration allegations. A meaningful opportunity to respond would have enabled consideration of his records and compliance arrangements before confinement. Ex. A ¶¶ 3–8, 14–27, 31; Exs. B, D–H.

41. The later bond hearing is relevant but does not automatically determine whether adequate process preceded the initial deprivation. Petitioner seeks restoration of the pre-detention status quo without asking this Court to reweigh the Immigration Judge's discretionary bond determination. He alleges that the loss of liberty without the advance safeguards required in these particular circumstances violated the Fifth Amendment.

## CLAIM TWO—FIFTH AMENDMENT SUBSTANTIVE DUE PROCESS

42. Petitioner realleges paragraphs 1 through 34. Independently of the notice-and-hearing defects alleged in Claim One, he alleges that the decision to confine him was arbitrary because it lacked a sufficient relationship to an individualized civil custody purpose. The injury alleged here is unjustified physical confinement itself, not merely the denial of an opportunity to respond.

43. Civil immigration detention is subject to substantive constitutional limits. Zadvydas v. Davis, 533 U.S. 678 (2001), recognizes the fundamental liberty interest implicated by physical

confinement, although its holding concerns potentially indefinite post-removal-period detention. Demore v. Kim, 538 U.S. 510 (2003), also recognizes that detention during removal proceedings may be constitutionally permissible. Petitioner therefore does not contend that all initial immigration detention requires an individualized finding of necessity or that his pending asylum application and employment authorization immunize him from detention. He challenges the allegedly arbitrary application of civil custody authority to his particular circumstances.

44. The I-213 identifies a TSA referral, database checks, alleged student-status violations, a targeted airport operation, identity verification, an asserted arrest warrant, and arrest without incident. Petitioner acknowledges those recorded investigative steps. Nevertheless, the report does not articulate an individualized finding of dangerousness, explain why this domestic trip demonstrated a risk of absconding, or describe consideration of less restrictive means of securing compliance. Its disposition states that he will remain in custody pending immigration proceedings without supplying a separate custody rationale. Petitioner relies on that omission as supporting an inference—not conclusive proof—that grounds for removability were treated as sufficient grounds for confinement. Ex. D at 2–4.

45. That inference must be assessed with the circumstances already alleged: Petitioner's established address, pending asylum application, employment authorization, documented employment, tax filings, community ties, and domestic travel. The report itself acknowledges his asylum filing and pending USCIS applications, yet states that he has no known immigration benefits or protections; its first page describes him as unemployed or retired despite the employment evidence described above. Those entries do not establish that he retained F-1 status or disprove removability. They do raise a concrete question whether the custody decision

reflected an accurate assessment of his circumstances rather than a categorical response to an alleged status violation. Ex. D at 1, 3–4; Exs. A, B, E, G–H.

46. Petitioner alleges, on the basis of these circumstances and the absence of an articulated custody rationale in the I-213, that Respondents confined him without a genuine individualized assessment connecting confinement to securing his appearance or protecting the community. The pleaded constitutional defect is not simply that officials failed to write down reasons or that a less restrictive option existed. It is that the deprivation itself allegedly lacked a sufficient nonpunitive justification. The I-213 alone does not establish what any separate custody determination, warrant application, or other contemporaneous record may show; those materials and the recorded body-worn-camera footage are relevant to testing this allegation. Ex. D at 1–4.

47. Petitioner acknowledges the November 3 bond denial and does not allege that he has never received a custody hearing. Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022), rejects an automatic entitlement to a second bond hearing with a government clear-and-convincing burden on the facts addressed there. This claim requests neither that automatic procedure nor a new weighing of bond factors. Petitioner contends that the later hearing does not, by itself, establish the constitutional validity of the initial deprivation. He recognizes that relief from present custody also requires the Court to consider whether the later order supplies an independent lawful basis for confinement; an antecedent defect alone does not necessarily require present release.

48. To the extent the Court finds that present custody remains the product of arbitrary confinement and is not independently justified by a constitutionally valid intervening determination, Petitioner requests habeas relief ending that restraint, subject to lawful conditions.

This claim is distinct from Claim One because it challenges the substantive justification for confinement even if the procedures used to impose it were otherwise adequate.

## PRAYER FOR RELIEF

49. Under 28 U.S.C. §§ 2241 and 2243, Petitioner respectfully requests that the Court:

A. Determine that the deprivation of liberty violated Fifth Amendment procedural due process under Claim One and, independently, to the extent supported by the evidence, that arbitrary confinement lacking sufficient civil justification violated Fifth Amendment substantive due process under Claim Two;

B. Grant the writ and order immediate release, restoring community liberty preceding October 9, 2026, subject to lawful conditions the Court finds appropriate, and require return of confiscated identification and personal documents;

C. Pending disposition, preserve access to counsel and effective adjudication by directing that Petitioner remain at his present Adelanto facility absent leave of Court, except for release or necessary emergency medical transport, with prompt notice of transport and location; and

D. Grant further relief necessary and appropriate to remedy the constitutional violations established under either claim, with relief from present custody dependent on the absence of an independent lawful basis for that custody.

Dated: November 15, 2026

Respectfully submitted,

s/ Junmei Wu

Junmei Wu, Esq.

Attorney for Petitioner Qingzhe Xu

## VERIFICATION

I am the attorney for Petitioner Qingzhe Xu and submit this verification on his behalf pursuant to 28 U.S.C. § 2242 because he is detained at the Adelanto ICE Processing Center and cannot readily sign this petition. I have discussed the facts stated in this Petition with Petitioner, and have reviewed the documents attached as exhibits. I verify under penalty of perjury under the laws of the United States that the factual statements in this Petition are true and correct to the best of my knowledge, information, and belief.

Executed on November 15, 2026, in Pasadena, California.

s/ Junmei Wu

Junmei Wu, Esq.

Attorney for Petitioner Qingzhe Xu

## CERTIFICATE OF COMPLIANCE WITH FED. R. CIV. P. 5.2

Counsel certifies that this Petition and the accompanying exhibits have been redacted in accordance with Federal Rule of Civil Procedure 5.2 and Local Rule 5.2-1. Unredacted records are maintained by counsel and will be lodged under seal if the Court so directs.

Dated: November 15, 2026

s/ Junmei Wu

Junmei Wu, Esq.

Attorney for Petitioner Qingzhe Xu

## EXHIBIT LIST

**Exhibit A** — Declaration of Qingzhe Xu bearing a November 5, 2026 date (pp. 1–3), followed by counsel's declaration dated November 13, 2026, regarding review in Chinese, confirmation,

and authorization (pp. 4–5); five pages total. Petitioner's declaration is not personally signed; counsel's declaration explains the circumstances and bears /s/ Junmei Wu.

**Exhibit B** — EAD History with USCIS, five pages: biometrics notice and October 2021 processing stamp (p. 1); April 2022 approval (p. 2); April 2022 mailing document to Fontana (p. 3); December 2024 approval (p. 4); December 2024 mailing document to San Bernardino (p. 5).

**Exhibit C** — November 10, 2026 notice setting the December 8, 2026, internet-based master calendar hearing.

**Exhibit D** — Form I-213 and continuation pages dated October 9, 2026, four pages.

**Exhibit E** — USCIS asylum receipt dated September 3, 2021, acknowledging receipt on September 2, 2021, one page.

**Exhibit F** — CBP I-94 record showing F-1 classification and D/S admission, one page.

**Exhibit G** — Tax Returns, 66-page packet, including federal and California returns and supporting materials. Corroborates the reported Fairmont Drive address and income history.

**Exhibit H** — Amazon earnings statements, eight pages, covering pay periods September 13–October 10, 2026, with pay dates September 25–October 16, 2026. Corroborates employment shortly before detention and the Fairmont Drive address. A post-arrest pay date does not establish post-arrest work.

## PROOF OF SERVICE

I am over the age of eighteen and not a party to this action. On November 15, 2026, I caused the foregoing Petition for Writ of Habeas Corpus to be served on Respondents through the Court's electronic filing system.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: November 15, 2026, in Pasadena, CA.

s/ Junmei Wu

Junmei Wu, Esq.

Attorney for Petitioner Qingzhe Xu