**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

QINGZHE XU,

Petitioner,

v.

WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,

Respondents.

CASE NO. 5:26-cv-06865-SK

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Qingzhe Xu is a citizen of China admitted to the United States in 2019 on an F-1 student visa so that he could attend college here. About two years later, he applied for asylum claiming that he would face religious persecution if he returned to China. That asylum application evidently remains pending. But meanwhile, his lawful F-1 status was terminated in December 2022 because petitioner failed to enroll (or stay enrolled) in school as required by the terms of his visa. So, on October 9, 2026, he was arrested on an administrative warrant at Los Angeles International Airport while waiting to board a domestic flight. He has been detained at the Adelanto ICE Processing Center since.

On November 3, 2026, petitioner received a custody redetermination hearing before an immigration judge—25 days after his arrest. At that hearing, the immigration judge denied release, but petitioner says he intends to appeal that decision to the Board of Immigration Appeals. As pertinent here, though, petitioner does not challenge the immigration judge's order on its own terms. He instead seeks immediate release by a federal habeas court under 28 U.S.C. § 2241 based on two purported Fifth Amendment violations that preceded his November detention hearing. The first is that his October arrest without "notice and a pre-detention hearing before a neutral decisionmaker"

violated procedural due process. The second is that his initial detention violated substantive due process because the agents who arrested him made no individualized assessment of whether he is a flight risk or a danger.

For the reasons below, even when taking petitioner's factual allegations as true, it plainly appears from the face of the petition (and its exhibits) that his Fifth Amendment due process claims do not warrant release from custody under § 2241. *See* 28 U.S.C. § 2243; Rule 4 of Rules Governing Section 2254 Cases (applicable to § 2241 habeas petitions through Rule 1(b)).

1. "Because this case involves a petition for the writ of habeas corpus, and not a claim for damages for illegal detention, the only issue before us is whether [petitioner's] detention is illegal today." *Alvarez-Mendez v. Stock*, 941 F.2d 956, 960 (9th Cir. 1991); *see Maleng v. Cook*, 490 U.S. 488, 490-93 (1989) (per curiam). So "no matter the circumstances of the arrest that brought him into custody initially, petitioner [had] the chance to obtain release—and thus supersede his initial seizure—at a custody redetermination hearing before an immigration judge." *Mendez v. Senior Warden*, 2026 WL 2449572, at *3 (C.D. Cal. Aug. 20, 2026). Yet (for this petition anyway) petitioner disclaims any challenge to the immigration judge's operative November 2026 detention order. Thus, "habeas relief is unavailable because his claims have been mooted by a subsequent, unchallenged basis for detention." *Thiravong v. Scott*, 2026 WL 1382356, at *2 (W.D. Wash. May 18, 2026).

2. To his counsel's credit, petitioner acknowledges that "an antecedent [procedural] defect alone does not necessarily require present release." (ECF 1 at 12). That acknowledgment is (at the very least) dispositive of the procedural due process claim because, even if there were any procedural defects in how petitioner was seized and initially detained, "they are not appropriately raised in a habeas petition, which considers the lawfulness of a continuing detention." *L-J-P-L- v. Wamsley*, 2025 WL 2430268, at *6 & n.3 (D. Or. Aug. 22, 2025); *see United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (When "sufficient ground for his detention by the

government is shown, he is not to be discharged for defects in the original arrest or commitment."); *Wolck v. Weedin*, 58 F.2d 928, 930 (9th Cir. 1932) ("Irregularities on the part of the government official prior to, or in connection with, the arrest would not necessarily invalidate later proceedings in all respects conformable to law.").

3. Besides, even if petitioner were right—that procedural due process somehow constitutionally mandates not only advance notice of his arrest but also a scheduled pre-detention hearing—he still must show prejudice from the denial of those procedures. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008); *accord Herman v. DHS*, No. 5:26-CV-01995-MBK, 2026 WL 1723960, at *4 (C.D. Cal. June 12, 2026) (recognizing that detainee's procedural due process claim of "sudden re-detention" "without notice or a meaningful opportunity to be heard why he should not be detained" is still subject to harmless error review). In other words, petitioner's procedural due process claim "asks us to engage with a counterfactual: Would the deprivation of life, liberty, or property have still occurred even there had been due process." *Nationwide Recovery, Inc. v. City of Detroit*, 163 F.4th 977, 990 (6th Cir. 2026). Under petitioner's own counterfactual here, he would have obtained a pre-detention hearing before an immigration judge. Yet petitioner never explains how the outcome of that missing pre-detention hearing would have been any different than the consummated post-detention hearing he received 25 days after his arrest. *Cf. United States v. Montalvo-Murillo*, 495 U.S. 711, 721 (1990) ("An order of release in the face of the Government's ability to prove at once that detention is required by the law has neither causal nor proportional relation to any harm caused by the delay in holding the hearing.").

4. Petitioner is also mistaken that—as a habeas remedy—release (and only release) can restore him to the proper "status quo." (ECF 1 at 10, 12). That contention is not only wrong as a matter of habeas first principles. *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (Release "need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."); *Hilton v. Braunskill*, 481

U.S. 770, 775 (1987) (The "federal courts may delay the release of a successful habeas petitioner in order to provide the [government] an opportunity to correct the constitutional violation found by the court."). It also confuses the loss of liberty, which is a right protected by procedural due process, with the constitutional violation itself—which is not the loss of liberty alone, but the loss of that protected interest *without the process due*. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.") (original emphasis).

5. The status quo ante for petitioner, then, is not freedom from custody as such—and so granting release would be a "windfall" for the claimed lack of process, *Lafler v. Cooper*, 566 U.S. 156, 170 (2012), which (according to petitioner's own theory) is mere notice and a pre-detention hearing. Correctly conceived (by petitioner's own reckoning), his status quo ante would be one in which he was summoned to appear at a scheduled hearing before an immigration judge rather than arrested (without "notice") and detained in the field. But one need not guess what would have happened at such a hypothetical pre-detention hearing—the outcome materialized 25 days later on November 3 when an immigration judge ordered petitioner detained. Petitioner thus cannot show any prejudice from his claimed procedural due process flaws, even on their own terms.

6. Petitioner's substantive due process claim fails as well. For starters, to the extent that this claim rests on the notion that he was detained in the field without a required individualized determination of flight risk or danger, that is just another version of his procedural due process claim wrapped up in substantive due process garb. Otherwise, substantive due process has no traction here: "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). And "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish

its goal." *Id.* at 528. Nor is petitioner's current detention indefinite: it will end when his removal proceedings do. *See Prieto-Romero*, 534 F.3d at 1063-65; *cf. Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (prohibiting post-removal-order detention only when "the Government finds itself unable to remove" a noncitizen who then otherwise faces "an indefinite term of imprisonment within the United States"). In short, there is no basis on which petitioner's detention (under the facts here) could be viewed as a substantive due process violation. *See Demore*, 538 U.S. at 523 ("As we said more than a century ago, deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'") (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)); *see also Reach Cmty. Dev. v. United States Dep't of Homeland Sec.*, No. 26-1575, 2026 WL 3403277, at *3-4 (9th Cir. Nov. 10, 2026).

7. To be clear, nothing in this order is intended to suggest that the Executive *should* detain those like petitioner pending their removal proceedings—indeed, that is a legitimate policy question and the subject of vigorous public debate. But that is different from whether the Executive *can* detain those like petitioner, who remain in the United States without lawful status, under immigration detention statutes Congress duly enacted. It is Congress, not the federal judiciary, that enjoys "broad power over naturalization and immigration" and thus "regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976); *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (The Supreme Court "has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens.") (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). Among those rules is detention pending removal proceedings.

8. Thus, no matter how understandable petitioner's predicament is in practical reliance (or even humanitarian or moral) terms, "the Supreme Court has long held that aliens do not gain a blanket 'liberty' interest by entering the United States or

by continuing to reside here after entry." *Rodriguez v. Vergara*, --- F.4th ---, 2026 WL 3181188, at *10 (5th Cir. Oct. 23, 2026) (en banc) (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 659-60 (1892); and *Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893)). Petitioner's legal supposition that he acquired "a core, enumerated interest in 'freedom from physical restraint'"—just "because of the length of [his] residence here and [his] significant ties to the country"—is therefore constitutionally "untenable." *Id.* "Life in the United States, though highly prized, cannot be defined as a universal liberty" protected by the substantive component of the Fifth Amendment's Due Process Clause. *Id.* (citation omitted).

* * *

For all these reasons, the petition is denied. Judgment dismissing this action without prejudice will be entered accordingly.[1]

IT IS SO ORDERED.

DATED: <u>November 18, 2026</u>

STEVE KIM
United States Magistrate Judge

[1] Nothing in this order prevents petitioner from seeking another custody redetermination hearing based on materially changed circumstances. *See* 8 C.F.R. § 1003.19(e). Nor does anything said here impair petitioner's right to a prolonged detention hearing—the so-called *Rodriguez* bond hearing—if he remains detained within this district for six months or more. *See Rodriguez v. Holder*, No. CV 07-03239-TJH, 2013 WL 5229795, at *2-3 (C.D. Cal. Aug. 6, 2013). At that hearing, the government must prove the need for continued detention past six months by clear and convincing evidence. *See id.* Finally, nothing ordered here prevents petitioner from challenging the immigration judge's detention order, subject of course to possible exhaustion requirements and jurisdictional limits. *See* 8 U.S.C. § 1226(e); *Fan v. Bondi*, --- F. Supp. 3d ---, 2026 WL 2276462, at *14 (C.D. Cal. Aug. 6, 2026). On that score, the court retains jurisdiction over any successive § 2241 petition alleging that petitioner is being held in on custody within this district in violation of federal law. *See* 28 U.S.C. § 1651; *see also Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023) (abuse of the writ doctrine precludes reconsideration of claims that were or could have been raised in prior habeas petition).